James K. Ford et al., Administrators, etc., Appellants, *v.*
Charles O. Livingston et al., Respondents.

In 1888 O., as committee of P., a lunatic, commenced an action against an
elevated railroad company to restrain it from operating its road upon a
street in front of real estate belonging to P. Judgment was rendered
therein granting the relief sought, unless the company should tender
the committee $4,000, and receive a deed or release of the easements in
the street. An order of the court having been obtained on application
of O., authorizing him to execute the conveyance, he did so, and
received the money. Thereafter P. died intestate, unmarried and
leaving no descendants. In an action brought by the administrators of
the estate of P. to determine as between the heirs at law and next
of kin who were entitled to the money, *held*, that the money retained
the character of real estate, and so that the heirs were entitled thereto.
(Code Civ. Pro. § 2359.)

Plaintiffs claimed that the proceedings instituted by the committee for
the sale were invalid. *Held*, that plaintiffs were not in a position to
raise the question; that as the heirs, who were only interested, made no
objection, but claimed the proceeds, they thereby ratified the sale, and
upon acceptance of the proceeds would be estopped from denying its
validity; and that in any event plaintiffs had no interest in the fund, or
right to interfere.

Reported below, 70 Hun, 128.

(Argued October 27, 1893; decided November 28, 1893.)

Appeal from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made June 30, 1893, which affirmed a judgment in favor of
defendants entered upon a decision of the court on trial at
Special Term.

This action was brought to determine the title to a sum of
money received by Stephen H. Olin as committee of Benjamin
Page, a lunatic.

The facts, so far as material, are stated in the opinion.

*Henry A. Foster* for appellants. As the $4,000 was col-
lected by the committee of Benjamin Page during the latter's
lifetime, it is *prima facie* to be regarded as personal estate.
(3 R. S. [7th ed.] 2294, 2295, § 6.) The judgment in the
action brought by Mr. Olin as committee against the elevated

railroads, is equivalent to and has the same legal effect as an award in condemnation proceedings. (*A. B. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 254; *Sperb* v. *M. E. R. Co.*, 137 id. 161, 162; *Bohm* v. *M. E. R. Co.*, 129 id. 584.) An award of fee damages does not represent the value of any real estate taken, but is simply the amount of consequential damages sustained by the abutting owner as a result of the impairment of his easements. (*Newman* v. *M. E. R. Co.*, 118 N. Y. 618, 625; *Bohm* v. *M. E. R. Co.*, 129 id. 576, 588, 591; *Storck* v. *M. E. R. Co.*, 131 id. 518; *Becker* v. *M. E. R. Co.*, Id. 511, 512; *Sutro* v. *M. R. Co.*, 137 id. 593; *S. A. R. R. Co.* v. *M. E. R. Co.*, 138 id. 551; *Doyle* v. *M. E. R. Co.*, 136 id. 511, 512.) Damages awarded for consequential injuries result- ing from the impairment of an easement and collected during the lifetime of the owner of the property, are personal estate. (Schouler on Exrs. [2d ed.] § 218; Lewis on Em. Dom. §§ 318, 320; Mills on Em. Dom. §§ 66, 67; *Moore* v. *City of Boston*, 8 Cush. 274, 277, 278; *Neal* v. *Knox*, 61 Maine, 298, 300; *Sargent* v. *Machias*, 65 id. 592, 593; *Wells* v. *Cowles*, 4 Conn. 182; *Conklin* v. *City of Keokuk*, 73 Iowa, 343; *Schuylkill* v. *Decker*, 2 Watts, 343; *Tenbrooke* v. *Jahke*, 77 Penn. St. 392, 397; *McFadden* v. *Johnson*, 72 id. 335, 337; *Losch's Appeal*, 109 id. 72, 74; *Wood* v. *Comrs.*, 122 Mass. 394, 400.) If an award of damages for the taking or injuring of property for or by a public use is made during the life of the owner of the property, the fact that he is a lunatic does not change the course of administration or convert the damages from personal estate to realty. (*Ex parte Flamank*, 1 Simons [N. S.], 260, 267; *Emerson* v. *Cutler*, 14 Pick. 108, 118–121; *Pharis* v. *Gere*, 110 N. Y. 336; *In re Otis*, 101 id. 581; Code Civ. Pro. §§ 2339, 2343; *Dyer* v. *Dyer*, 34 Beav. 504; *Ex parte Phillips*, 19 Ves. 118, 124; *In re Pettit*, 2 Paige, 597; *In re Smith*, L. R. [10 Ch. App.] 84, 85; *In re Smith*, 5 Ves. 556; *In re Dikes*, 8 id. 79–81; *Adams* v. *Smith*, 20 Abb. [N. C.] 62, 63, 94; *Ex parte Grimstone*, Ambler, 708; *New-combe* v. *Newcombe*, 3 Irish Eq. 414; *Lord Leitrim* v. *Enery*, 6 id. 357; *Atty.-Gen.* v. *Ailesbury*, L. R. [16 Q. B. D.] 439;

*Sergeson* v. *Sealey*, 2 Atk. 413 ; *Lord Compton* v. *Oxenden*, 2 Ves. 264 ; *Pierson* v. *Shore*, 1 Atk. 480.) The committee simply compromised the judgment he had obtained against the elevated railway companies, and did not attempt to sell any of Benjamin Page's real estate. (101 N. Y. 581 ; 110 id. 336 ; Code Civ. Pro. §§ 2348, 2350, 2351, 2354, 2355, 2356 ; *Ellwood* v. *Northrup*, 106 N. Y. 172, 183–186 ; *Battell* v. *Torrey*, 65 id. 294, 297–299 ; *In re Pettit*, 2 Paige, 597, 598 ; *In re Smith*, L. R. [10 Ch. App.] 84, 85 ; *In re Smith*, 5 Ves. 556 ; *In re Dikes*, 8 id. 79–81 ; Laws of 1801, chap. 30 ; *Baker* v. *Lorillard*, 4 N. Y. 257 ; *Rogers* v. *Dill*, 6 Hill, 415 ; *Onderdonk* v. *Mott*, 34 Barb. 106, 113, 114 ; *Stilwell* v. *Swarthout*, 81 id. 109.) The money collected by the committee during the lunatic's life in compromise of the judgment and all other causes of action in the committee's favor, was personal estate. (3 R. S. [7th ed.] 2294, 2295, § 6.) Even if the defendants should establish their claim that the easements taken by the operation and maintenance of the elevated railroad were actually sold and conveyed to the elevated railway companies in pursuance of a valid proceeding for the sale of the lunatic's real estate, they would be entitled to but six cents of the $4,000 fee damages. (*Bohm Case*, 129 N. Y. 576, 588, 591, 592 ; *Newman Case*, 118 id. 618, 625 ; *Storck Case*, 131 id. 518 ; *Bookman Case*, 137 id. 302, 304, 305 ; *Sutro Case*, Id. 593 ; *Becker Case*, 131 id. 511 ; *Doyle Case*, 136 id. 511, 512 ; *Sperb Case*, 137 id. 596.)

*William E. Wyatt* for respondents. The property sold to and taken by the elevated railroads was real estate and not personal property. (*Kernochan* v. *E. R. R. Co.*, 128 N. Y. 559 ; *Story* v. *E. R. R. Co.*, 90 id. 145 ; *Mitchell* v. *E. R. R. Co.*, 134 id. 11 ; *Foote* v. *E. R. R. Co.*, 58 Hun, 481 ; *White* v. *E. R. R. Co.*, 139 N. Y. 19 ; *Newman* v. *E. R. R. Co.*, 118 id. 621–625 ; *Lohr* v. *M. E. R. Co.*, 104 id. 268.) The property which produces the fund being real property in the lifetime of the lunatic, retains this same character for the

purposes of a division of his estate, real and personal, after his death among his heirs and next of kin, independent of any statute rule. (*Cutting* v. *Lincoln*, 9 Abb. [N. S.] 436; *Horton* v. *McCoy*, 47 N. Y. 21; *Forman* v. *Marsh*, 11 id. 544; *In re Thomas*, 1 Hun, 473.) The statute law of the state expressly provides that this fund of $4,000 must be considered and treated as real estate. (Code Civ. Pro. §§ 2348, 2359; *Horton* v. *McCoy*, 47 N. Y. 21; *Forman* v. *Marsh*, 11 id. 544; *Wells* v. *Seeley*, 47 Hun, 109–116.) The order of succession of these proceeds of real estate sold, cannot be altered by any informality in the proceedings taken by the committee for leave to sell. (*In re Valentine*, 72 N. Y. 184; *A. Ins. Co.* v. *Barnard*, 96 id. 524–531; *In re Place*, 1 Redf. 276; *In re Cooper*, 93 N. Y. 507, 512; *Aldrich* v. *Funk*, 48 Hun, 368; *Shumway* v. *Cooper*, 16 Barb. 556–558.)

EARL, J. Benjamin Page died in February, 1892. For several years before his death, and to the time of his death, he was a lunatic, and owned real estate abutting on the elevated road in the city of New York. In 1876 Stephen H. Olin was appointed the committee of his person and estate, and continued such until the time of the lunatic's death. In 1888 Olin commenced an action against the elevated railway company to restrain it from maintaining and operating its road in front of the real estate of the lunatic; and he recovered a judgment restraining the railroad from operating its road in front of the real estate, unless it should tender to Olin, as such committee, the sum of $4,000, with interest thereon, and upon such tender receive from him a deed or release of all the interest, property, rights and easements of Olin and the lunatic in the street in front of the real estate taken by the railroad company by the erection and operation of the road. In January, 1892, upon the petition of Olin, an order was made by the Court of Common Pleas in the city of New York, entitled "In the Matter of the Application of Stephen H. Olin as committee of the person and estate of Benjamin Page, a lunatic, for leave to sell cer-

tain real estate," authorizing and directing the committee to execute and deliver to the railroad company a conveyance of all the interest, property and rights in and to the street in front of the real estate taken by the erection and operation of the railroad, upon payment to him of $4,000 therefor. Thereafter, in compliance with the judgment against the railroad company, and of the order just mentioned, Olin executed and delivered to the railroad company the deed, and received from it the sum of $4,000. A month later the lunatic died intestate, unmarried and leaving no descendants, and the real estate mentioned descended to his heirs. The plaintiffs were appointed administrators of his estate, and as such demanded of Olin the money thus paid to him, and upon his refusal to pay the money to them they commenced an action against him to recover the same. Upon his motion the money was paid into court, and the defendants, the heirs of the lunatic, were substituted as defendants in his place, and the action was continued against them. The next of kin and the heirs of the lunatic were not the same persons. The plaintiffs claimed the money as personal estate for the next of kin, and the defendants claimed that it retained the character of real estate, and passed and belonged to them as heirs. The court below held that it belonged to the defendants as heirs, and this controversy between the next of kin and heirs is now to be finally determined.

We think it cannot be questioned, under the decisions of this court, that this money was paid for an interest in real estate. (*Newman* v. *Elevated Railroad Co.*, 118 N. Y. 621; *Kernochan* v. *Same*, 128 id. 559; *Mitchell* v. *Same*, 134 id. 11; *Sperb* v. *Same*, 137 id. 155.) By the deed to it, assuming it to be valid and effectual, it acquired all the property interests of the lunatic in the street, with the right, by the maintenance and operation of its road, to inflict permanent damage to his abutting real estate, thus diminishing the value of the inheritance; and thus a portion of the lunatic's real estate was converted into money. The conveyance was really under the order of the court to carry into effect the judgment in the

action commenced by the committee against the railroad company, and under such a conveyance, assuming it to be valid, the railroad company obtained just the title it would have had if it had taken the real estate by condemnation proceedings. (*American Bank Note Company* v. *Elevated Railroad Co.*, 129 N. Y. 254.) If the $4,000 was more than the value of the property rights conveyed, that is a matter which does not concern these plaintiffs.

This money retained the character of real estate. By the act chapter 417 of the Laws of 1864, provision was made for the sale of the real estate of the lunatic, which was in the hands of his committee, and it was provided that the proceeds should retain the character of real estate. This provision was re-enacted in 1874 (Laws of that year, chap. 446, title 3, § 14), and it is embodied in the Code, section 2359.

But the claim is made by the plaintiffs that the proceedings instituted by the committee for the sale of this real estate were invalid and ineffectual because they did not conform to the provisions of the Code on the subject. The answer to this is that the plaintiffs are not in a position to make the objection. The money was paid for the conveyance of the real estate. The heirs, the only persons interested in the real estate, make no objection, but, by claiming the proceeds, they ratify and confirm the proceedings, and, by taking the proceeds, they would be estopped from denying their validity. If the conveyance is ineffectual to convey a valid title, the railroad company may still compel a proper and sufficient conveyance.

But we may take a broader view of this case. We may assume that the conveyance of the committee to the railroad company was made without any authority of law, because the provisions of the Code regulating the sale of the lands of lunatics were not complied with, and that it was and remains utterly void. Nevertheless, the money was paid to him for this real estate, and if his proceedings for the sale were void and inoperative then he held the money in trust for the railroad company, and to and for its use, and it had the right to reclaim it at any time, and the plaintiffs had no interest what-

ever in it, and no right to interfere with it; and they cannot complain of the judgment awarding it to the defendants. In that event the title to the real estate abutting on the street with the appurtenant easements passed unimpaired to the defendants, and if they take this money then they can be compelled to give an effective conveyance of the real estate. Hence, whether the conveyance was void or valid, in either event the plaintiffs have no right to this money, and, therefore, the judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____